[Cite as *State v. Brown*, 2019-Ohio-2599.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | | |

| STATE OF OHIO | | C.A. No. 18CA011310 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| CHARLES BROWN | | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | | CASE No. 16CR094735 |

DECISION AND JOURNAL ENTRY

Dated: June 28, 2019

SCHAFER, Judge.

{¶1}   Defendant-Appellant, Charles Brown, appeals from the judgment of the Lorain County Court of Common Pleas.  This Court reverses.

I.

{¶2}   D.B. is Brown's daughter, though he had little involvement in her life for many years.  Once she became a preteen and teenager, Brown spent more time with her, visiting and taking her and her half-sisters for shopping trips.  He also began talking to her about "sex lessons."  Brown repeatedly expressed his desire to teach D.B. how to engage in both oral sex and vaginal intercourse so that she could entice and maintain the interest of a wealthy man someday.  He raised the subject whenever the two were alone together; a circumstance that increased once she moved in with him and her half-sisters at the age of seventeen.

{¶3}   About a month after D.B. moved in with Brown, he grounded her because she spent the night elsewhere and failed to call home.  Although he allowed her to go to work each

day, he informed her that she would have to remain grounded until she complied with the sex lessons. D.B. then surreptitiously recorded several conversations she had with Brown, during which he referenced the lessons. D.B. provided the recordings to the police, and the police arrested Brown.

{¶4} A grand jury indicted Brown on one count of attempted sexual battery, one count of attempted child endangering, and one count of domestic violence. At the conclusion of his trial, a jury found Brown guilty of the two attempt counts, but not guilty of the domestic violence count. The two attempt counts were then merged as allied offenses of similar import such that the court only sentenced Brown on the attempted sexual battery count. The court imposed a prison sentence of fourteen months and classified Brown as a tier III sexual offender.

{¶5} Brown now appeals from the trial court's judgment and raises seven assignments of error for our review. For ease of analysis, we consolidate several of the assignments of error.

II.

### Assignment of Error I

There was insufficient evidence of attempted sexual battery to sustain a conviction in Count One.

### Assignment of Error II

There was insufficient evidence of attempted child endangerment to sustain a conviction in Count Two.

{¶6} In his first and second assignments of error, Brown argues that his convictions for attempted sexual battery and attempted child endangering are based on insufficient evidence. We agree.

{¶7} A sufficiency challenge of a criminal conviction presents a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "The relevant inquiry is

whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Although we conduct a de novo review when considering a sufficiency of the evidence challenge, "we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570, C-120751, 2013-Ohio-4775, ¶ 33.

**{¶8}** R.C. 2907.03(A)(5) prohibits a parent from engaging in sexual conduct with his own child. The statute contains no mens rea. *See* R.C. 2907.03(A)(5). Rather, "it imposes strict liability for sexual conduct on * * * offenders who exploit their victims through established authoritarian relationships." *State v. Mole*, 149 Ohio St.3d 215, 2016-Ohio-5124, ¶ 2. Sexual conduct includes vaginal or anal intercourse, oral sex, and any type of unprivileged vaginal or anal penetration. R.C. 2907.01(A). Whoever violates R.C. 2907.03(A)(5) is guilty of sexual battery. R.C. 2907.03(B).

**{¶9}** R.C. 2919.22(B)(2) prohibits any person from torturing or cruelly abusing a child under the age of eighteen. As used in the statute,

> the term "abuse[]" * * * means to "ill-use, maltreat; to injure, wrong or hurt." *State v. Nivert*, 9th Dist. Summit No. 16806, 1995 WL 608415[,] *2 (Oct. 18, 1995)[, quoting I Oxford English Dictionary 44-45 (2d ed.1933)]. "Torture," as used in that same section, means: "(1) the infliction of severe pain or suffering (of body or mind); (2) acting upon violently in some way, so as to strain, wrench, distort, twist, pull or knock about." [*Nivert* at *2, quoting XI Oxford English Dictionary at 169-170]. Finally, to treat someone "'cruelly' is to: (1) demonstrate indifference to or delight in another's suffering; (2) treat severely, rigorously, or sharply." [*Nivert* at *2, quoting II Oxford English Dictionary at 1216-1217].

*State v. Brown*, 9th Dist. Summit No. 23737, 2008-Ohio-2956, ¶ 12. Examples of torturing or cruelly abusing a child include

various actions resulting in the "battered child syndrome;" reducing a child to a state of frightened withdrawal to the point where he may become incapable of normal learning because of repeated punishment inflicted with little or no cause; and chaining a child to his bed or locking him in his room for prolonged periods so as to endanger his sanity or risk his arrested development.

1973 Legislative Service Commission Note, R.C. 2919.22. "The culpable mental state required to establish a violation of [R.C.] 2919.22 is one of 'recklessness.'" *State v. Surles*, 9th Dist. Summit No. 23345, 2007-Ohio-6050, ¶ 5. Whoever violates R.C. 2919.22(B)(2) is guilty of child endangering. R.C. 2919.22(E)(1).

{¶10} A criminal attempt occurs when a person purposely or knowingly "commits an act that constitutes a substantial step toward the commission of an offense." *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 26, citing *State v. Woods*, 48 Ohio St.2d 127 (1976), paragraph one of the syllabus; R.C. 2923.02(A). "A 'substantial step' requires conduct that is 'strongly corroborative of the actor's criminal purpose.'" *State v. Group*, 98 Ohio St.3d 248, 2002-Ohio-7247, ¶ 95, quoting *Woods* at paragraph one of the syllabus. "The act required need not constitute the last possible event short of completing the crime." *State v. Hartsook*, 9th Dist. Summit No. 14769, 1991 WL 35137, *2 (Mar. 6, 1991). Yet, "[t]he intent to commit a crime does not itself constitute an attempt, nor does mere preparation." *State v. Dapice*, 57 Ohio App.3d 99, 104 (9th Dist.1989). *Accord State v. Smith*, 9th Dist. Lorain No. 98CA007168, 2000 WL 110411, *3 (Jan. 26, 2000). The substantial step standard "properly direct[s] attention to overt acts of the defendant which convincingly demonstrate a firm purpose to commit a crime * * *." *Woods* at 132. *Accord Group* at ¶ 102.

{¶11} D.B. testified that Brown is her father, but she had limited contact with him before the age of ten or eleven. Once she got a little older, Brown started spending more time with her, taking her on shopping trips with her two half-sisters (i.e., Brown's other daughters)

and buying her things. According to D.B., she was fourteen years old when he first began talking to her about "sex lessons."

{¶12} D.B. testified that Brown expressed an interest in teaching her how to have oral sex and vaginal intercourse. When she asked him whether he only meant to explain those concepts or meant to show her, he indicated that he meant to show her. D.B. stated that Brown repeatedly broached the subject of the sex lessons and asked if she was ready to receive them, always waiting until they were alone together to ask. She testified that he continued to do so on a regular basis until she left Ohio to live with her grandparents. During that time period, Brown only occasionally discussed the sex lessons on the phone, indicating that D.B. had "missed out on [her] chance to learn * * *."

{¶13} In June 2016, when D.B. would have been seventeen years old, a fight with her grandparents prompted her to return to Ohio. In need of a place to live, she grudgingly accepted Brown's offer of room and board and stayed with him and her half-sisters. She testified that Brown would drive her to work each day, would pick her up at the end of her shift, and would sometimes meet her on her lunch breaks. Whenever they were alone, Brown would discuss the sex lessons and ask whether D.B. was ready to learn how to have oral sex and sexual intercourse. She testified that Brown never actually touched her during their discussions, but was serious about the lessons. Brown emphasized that the lessons were necessary to ensure her future success because D.B. had no other skills, came from a family of "hoes," and would not amount to anything more than that.

{¶14} One July evening, D.B. spent the night with a relative of whom Brown did not approve. Because her cell phone battery had died, she did not call Brown to inform him of her whereabouts. When she returned home the next day, Brown "started flipping out" and grounded

D.B.  He informed her that she could continue to go to work, but otherwise had to stay in the house.  She also would not be allowed to see her friends or other family members.  According to D.B., Brown told her that the grounding would continue until she complied with the sex lessons.  Otherwise, he said, he could not trust her to be safe outside the house on her own.

{¶15}  D.B. felt disgusted that Brown was essentially blackmailing her for sex.  Though he never touched her in a sexual manner while she lived with him, she testified that she "felt like he would eventually try to either force [her] to take the sex lessons or just * * * [keep her] grounded forever until [she] did it."  Moreover, the few family members that she told about the sex lessons did not believe her.  Deciding that she needed proof, D.B. used her cell phone to record several conversations with Brown.  Once she had the recordings, she shared them with her grandmother and the police.

{¶16}  The State introduced D.B.'s cell phone recordings at trial.  The recordings capture Brown speaking to D.B. about the sex lessons and confirming that they would enact the lessons together.  During one recording, D.B. can be heard asking Brown whether he meant for them to actually have sex, and Brown can be heard responding: "Best damn punishment.  It's just a goddamn lesson.  There's nothing to it."  D.B. can then be heard informing Brown that what he is suggesting amounts to incest, and Brown can be heard sighing and replying: "You can look at it how you want."  Brown then assures D.B. that he has had many girlfriends in the past and the best lovers among them had all been taught how to have sex by their parents.

{¶17}  Brown argues that his convictions are based on insufficient evidence because mere words cannot constitute an attempt.  As to attempted sexual battery, he argues that there was no evidence he ever touched D.B. in a sexual manner.  As to attempted child endangering, he argues that "sexual conduct does not constitute torture or cruel abuse."  Because he only

verbally expressed his desire to engage in sexual conduct with D.B. and never committed any overt acts in support of that desire, he argues that his convictions must be reversed.

{¶18} Having considered the evidence in a light most favorable to the prosecution, this Court must conclude that the State failed to carry its burden of production on Brown's attempt convictions. *See Jenks*, 61 Ohio St.3d 259 at paragraph two of the syllabus. As noted, the crime of attempt requires a defendant to have taken "a substantial step toward the commission of an offense." *Carson*, 2013-Ohio-5785, at ¶ 26. The intent to commit a crime is not enough. *Dapice*, 57 Ohio App.3d at 104. Nor is "mere preparation." *Id.* Instead, the defendant must have engaged in conduct "'strongly corroborative of [his] criminal purpose.'" *Group*, 98 Ohio St.3d 248, 2002-Ohio-7247, at ¶ 95, quoting *Woods*, 48 Ohio St.2d 127 at paragraph one of the syllabus. Because the State failed to set forth evidence that Brown took any substantial step toward the commission of either of his offenses, his convictions cannot stand.

{¶19} D.B. readily admitted that Brown never touched her in a sexual manner at any point during the indictment period. Nor was there evidence that he paired his verbal expressions of intent with any other significant conduct, such as ordering her to remove her clothing. *See, e.g., State v. Powell*, 49 Ohio St.3d 255, 261 (1990). While D.B. worried that Brown might *eventually* force her to have sex, he never actually tried to do so. Moreover, we cannot agree with the State's contention that the grounding Brown imposed upon D.B. constituted a substantial step in support of his attempted sexual battery conviction. The record reflects that he grounded D.B. because she spent the entire night elsewhere and failed to call home. Even if he indicated that she would remain grounded until she had sex with him, any purported nexus between the grounding and any future sexual conduct that might occur was both tenuous and speculative. At best, Brown's insistence that D.B. would remain grounded until she was ready to

have sex with him amounted to a preparatory act, not a substantial step indicative of an attempt to compel sexual conduct. *See Smith*, 2000 WL 110411, at *3 (pointing a knife at someone, even when accompanied by a verbal threat, is an equivocal and preparatory act rather than an attempt to cause physical harm for purposes of a felonious assault conviction). *See also State v. Davis*, 76 Ohio St.3d 107, 114-115 (1996).

{¶20} Likewise, we cannot agree that the grounding or Brown's criticisms of D.B. served as evidence of attempted torture or cruel abuse for purposes of attempted child endangering. *See* R.C. 2919.22(B)(2). Though "torture" encompasses the infliction of mental suffering, the suffering must be severe in nature. *Brown*, 2008-Ohio-2956, at ¶ 12, quoting XI Oxford English Dictionary at 169-170. For example, the act of "reducing a child to a state of frightened withdrawal to the point where he may become incapable of normal learning because of repeated punishment inflicted with little or no cause * * *." 1973 Legislative Service Commission Note, R.C. 2919.22. The record here is devoid of any acts the nature of which would be akin to that level of severity. Though D.B. testified that Brown's actions and words disgusted her and left her depressed, she continued to go to work each day, kept in contact with her relatives, and went to the police department when she was ready to do so. Brown did not lock her in her room, take away her cell phone, or make it impossible for her to get help. Indeed, it appears that she left the house of her own volition to meet with her grandmother and the police. While Brown's behavior is despicable and depraved, this Court cannot conclude that it "convincingly demonstrate[s] a firm purpose to commit a crime * * *." *Woods*, 48 Ohio St.2d at 132. Without more, "we would be remiss in performing our duties of review if we let [his] attempt[] * * * conviction[s] stand." *State v. Heinish*, 50 Ohio St.3d 231, 239 (1990).

{¶21} Because the State set forth insufficient evidence to establish that Brown took any substantial step toward the commission of either of his offenses, his first and second assignments of error are sustained. The judgment is reversed, and the cause remanded to the trial court for it to enter an order discharging Brown and such further orders as are consistent with this opinion.

### Assignment of Error III

Count One fails to state an offense because attempted sexual battery where the object offense is a violation of R.C. 2907.03(A)(5) is not a cognizable offense in Ohio.

### Assignment of Error IV

The guilty verdict in Count Two is for a first-degree misdemeanor.

### Assignment of Error V

The trial court erred when it refused to give the Defendant's proposed jury instruction on "attempt."

### Assignment of Error VI

The trial court erred when it permitted the prosecutor to tell the jury that proof beyond a reasonable doubt does not require one hundred percent certainty[.]

### Assignment of Error VII

The convictions are against[]the manifest weight of the evidence.

{¶22} Given our resolution of Brown's first and second assignments of error, his remaining assignments of error are moot, and we decline to address them. *See* App.R. 12(A)(1)(c).

III.

{¶23} Brown's first and second assignments of error are sustained. The judgment of the Lorain County Court of Common Pleas is reversed, and the cause is remanded for further proceedings consistent with the foregoing opinion.

Judgment reversed,
and cause remanded.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

JULIE A. SCHAFER
FOR THE COURT

TEODOSIO, P. J.
CONCURS.

HENSAL, J.
CONCURRING IN PART, AND DISSENTING IN PART.

{¶24} I disagree with the majority's conclusion that the State presented insufficient evidence to support Mr. Brown's conviction for attempted child endangering. The evidence indicates that Mr. Brown's conduct – including his demeaning comments, his daily insistence

that the victim engage in incest with him, and his punishment of the victim until she agreed to have sex with him – made the victim feel horrible, sad, angry, depressed, and like she would never amount to anything. While Mr. Brown never physically abused the victim during the relevant time period, when viewing the evidence in a light most favorable to the State, I would hold that sufficient evidence existed to support Mr. Brown's conviction for attempted child endangering based upon his mental abuse of the victim. *State v. Brown*, 9th Dist. Summit No. 23737, 2008-Ohio-2956, ¶ 12 (noting that Section 2919.22(B)(2) encompasses mental suffering). I, however, agree with the majority's conclusion that the State presented insufficient evidence to support Mr. Brown's conviction for attempted sexual battery. I, therefore, respectfully concur in part and dissent in part.

APPEARANCES:

STEVEN L. BRADLEY and MARK B. MAREIN, Attorneys at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and LINDSEY C. POPROCKI, Assistant Prosecuting Attorney, for Appellee.