[Cite as *State v. Haskins*, 2024-Ohio-5908.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,              :

                                              No. 113309

v.                                             :

LAMAR HASKINS,                      :

    Defendant-Appellant.          :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 19, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-675923-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Nora C. Bryan, Assistant Prosecuting Attorney, *for appellee*.

Law Office of John T. Forristal and John T. Forristal, *for appellant*.

EMANUELLA D. GROVES, J.:

{¶ 1} Defendant-appellant, Lamar Haskins ("Haskins"), appeals his convictions, claiming the trial court erred in denying his proposed jury instructions,

failing to strike impermissible bad character evidence, denying his motion for mistrial, and denying his Crim.R. 29 motions for acquittal. Upon review, we affirm.

## I. Facts and Procedural History

{¶ 2} In November 2022, Haskins and his codefendant, Richard Crow ("Crow"), were indicted in a 25-count true-bill indictment. Counts 1 through 3 charged Haskins with gross sexual imposition in violation of R.C. 2907.05(A)(4), third-degree felonies, for the touching of victim S.L. (D.O.B. 04/27/07). Count 4 charged him with disseminating matter harmful to a minor to S.L., a fourth-degree felony. Counts 5 and 6 charged Haskins with gross sexual imposition in violation of R.C. 2907.05(A)(1), fourth-degree felonies, for touching the legs and buttocks of O.H. (D.O.B. 10/30/02). Counts 7, 9, 11, 13, and 15 charged him with rape of O.H., first-degree felonies. Counts 8, 10, 12, 14, 16, 18, 21, and 24 charged Haskins with sexual battery of O.H., third-degree felonies. Counts 17, 20, and 23 charged Haskins and Crow with rape of O.H., first-degree felonies. Counts 19, 22, and 25 charged Crow with unlawful sexual conduct with O.H., third-degree felonies.

{¶ 3} Haskins pleaded not guilty and filed a motion for a separate trial of the counts related to S.L. In the motion, Haskins advised that Crow proffered a statement of guilt implicating Haskins as a perpetrator in the counts involving O.H., entered a guilty plea, and agreed to testify for the State as a condition of his plea. The trial court granted Haskins' motion and advised that the first four counts of the

indictment would be tried separately.[1] On August 28, 2023, the case against Haskins proceeded to a jury trial on severed Counts 5 through 18, 20, 21, 23, and 24, all of which involved O.H.[2] The following evidence was presented at trial.

{¶ 4} O.H.'s mother ("Mother") testified that she and Haskins were previously in a relationship. O.H. was ten years old when they met, and Haskins moved into Mother's Cleveland apartment ("the apartment"). Haskins lived with Mother and O.H. for four to five years. Mother was a stay-at-home mom and did not work. Mother testified that O.H. and Haskins formed "a father and daughter relationship." (Tr. 300.) Haskins disciplined O.H. if she was in trouble, and O.H. listened to him. There were times Haskins would be home alone with O.H. Haskins would take O.H. to school and pick her up. When Mother and Haskins broke up in 2017 or 2018, Haskins no longer had access to O.H. and he and Mother had very limited contact.

{¶ 5} Mother testified that in August 2022, after Haskins had been out of her life for three or four years, O.H. told her that she was physically and sexually abused by Haskins. Mother called the police and reported O.H.'s disclosure. Police came to the apartment, took a report, and spoke to O.H. Mother also took O.H. to the Rape Crisis Center for a subsequent interview.

---

[1] The trial of severed Counts 1 through 4, which involved S.L., was set for September 18, 2023. On September 7, 2023, Haskins pleaded guilty to assault in violation of R.C. 2903.13, a first-degree misdemeanor, as amended in Count 1 of the indictment. Counts 2 through 4 were nolled.

[2] These counts were renumbered to avoid unfair prejudice to Haskins.

{¶ 6} During Mother's cross-examination, the following exchange occurred:

[DEFENSE COUNSEL:] [W]hen was [Haskins] sl[ee]ping on the blow-up bed [in the living room]?

[MOTHER:] Um it had to have been right after he had gotten out of jail.

[DEFENSE COUNSEL:] Objection.

THE COURT: Objection is sustained.

[MOTHER:] I can't remember.

THE COURT: Hold on. Hold on.

[MOTHER:] I can't remember.

THE COURT: Okay. If you can't remember the exact time, just say you can't remember. Please ask your next question.

[DEFENSE COUNSEL:] Yes.  Thank you, your Honor.

*Id.* at 310-311.  Defense counsel continued to cross-examine Mother before a sidebar was requested.  During the sidebar, defense counsel asserted that Mother's reference to Haskins' prior incarceration, or criminal history, was impermissible and prejudicial bad character evidence.  Defense counsel moved for a mistrial, arguing that "[Haskins'] character has been breached and this is a due process problem under the 14th and 5th Amendment and under the Ohio Constitution."  *Id*. at 313. The State countered that Mother did not say when Haskins got out of jail, why he was in jail, or how long he was in jail and defense counsel "moved on very quickly." *Id*. at 314.  The State argued that "the very limited mention that [Haskins] was in jail [did not] warrant a mistrial" and a curative instruction at the end of trial would be appropriate.  *Id*.  The trial court denied the defense's motion for a mistral and

advised that it "immediately sustained the objection and ordered the answers stricken from the record." *Id.* The trial court further advised that it would provide a curative instruction. At the end of the day, the trial court stated to the jury: "I want to remind you of an instruction that I gave you earlier this morning that any time an [objection to an] answer to a question or a question is sustained, you're not going to hear the answer. And any time any information is stricken from the record, you are to completely disregard any question and any answer." *Id.* at 383-384.

{¶ 7} O.H. testified that she first met Haskins when she was nine-and-a-half years old because "he was supposed to be [her] stepfather" and was dating Mother. *Id.* at 321. Haskins moved into the apartment, and O.H. lived "mainly with my mom and him." *Id.* O.H. stated that "[Haskins] would teach me how to cook. That's one thing. That's one thing I liked about him. And we played a lot of games. That's one thing I liked about him and that's how we forged a bond." *Id.* at 323. O.H. explained that "at first [their bond] was innocent, friendly. Like a stepfather." *Id.* at 324, 410 (indicating that he was "basically like a stepfather"). O.H. testified that Haskins disciplined her, she listened to him if he told her to do something, and they dealt with "normal [stepfather–stepdaughter] stuff." *Id.* When O.H.'s mother left the apartment, O.H. was home with Haskins.

{¶ 8} However, their bond changed when O.H. was 13. The first incident occurred when Mother grounded O.H. over the summer and took her phone away. Haskins told O.H. that he would let her use his phone if he could look at her in a "sexual looking" way. *Id.* at 327. O.H. explained that "it felt different [from their

normal stepfather–stepdaughter relationship] because it was a different look than a usual look. He just made me uncomfortable." *Id.* at 329. The following day, Haskins exchanged using his phone for touching O.H. O.H. recalled Haskins "fingering" her and rubbing her vagina while Mother was asleep. Later in the week, Haskins allowed O.H. to use his phone while he removed her pants and underwear and performed oral sex on her. One evening during that same summer, Haskins came into O.H.'s room while Mother was sleeping, took off her pants, told her to turn around, and inserted his penis into her vagina. O.H. performed oral sex on Haskins "[c]ountless times" and recalled Haskins inserting his penis into her vagina and anus "every time [Haskins got] a chance." *Id.* at 347.

{¶ 9} O.H. testified that these incidents occurred multiple times at the apartment, Haskins's friend's house, and at parks during the night when Haskins "t[ook her] outside to do those things," beginning when she was 13 and ending when she was 15 years old. *Id.* at 350. O.H. explained that she did not tell anyone at the time because she was scared, Haskins told her that no one would believe her, and she thought Mother would be mad at her.

{¶ 10} O.H. then described the sexual encounters that occurred at Haskins's friend Crow's house when she was turning 14 years old. The following exchange occurred:

> [THE STATE:] [W]e're going to talk about you said that he also did these things at his friend's house.
>
> [O.H.:] Yes.

[THE STATE:] Tell us about that.

[O.H.:] Well, he would take me to his friend's house named [Crow]. Very tall. I thought he was an officer. That's what he told me.

[THE STATE:] Who told you?

[O.H.:] Me and my mom.

[DEFENSE COUNSEL:] Objection.

THE COURT: When you say he told — are you saying Mr. Haskins said that?

[O.H.:] Yeah.

THE COURT: Okay. The objection is overruled.

[THE STATE:] Mr. Haskins told you what?

[DEFENSE COUNSEL:] Your Honor, can we sidebar?

THE COURT: No. You can continue. The objection overruled.

[O.H.:] He was an officer friend of his. He took me there.

[THE STATE:] Okay. And [Haskins] told you and your mom that this guy [Crow] is an officer?

[O.H.:] Yeah, was a friend of his officer. Probation officer.

[DEFENSE COUNSEL:] Objection.

THE COURT: The objection is overruled.

*Id.* at 353-354. O.H. testified that she knew that she was going to Crow's house for a "threesome," although she did not know what that meant, and agreed because "she didn't know what he'll do." *Id.* at 359. O.H. recalled performing oral sex on Crow, Crow touching her vagina, and Haskins inserting his penis into her vagina. O.H.

testified that "this specific threesome behavior" happened "a few times" at Crow's house. *Id.* at 360, 363. O.H. testified that she felt uncomfortable and knew that things that were happening were wrong but was scared to tell.

{¶ 11} When O.H. was 14 years old, Haskins started "getting in [O.H.'s] face, yelling," threatening and beating her, calling her names, being mean, and making her cry. *Id.* at 365-366. O.H. did not understand why Haskins was mad at her but knew it was about Crow. The sexual encounters stopped and Haskins became "even more mean" after O.H. told Haskins that she "couldn't" and "d[id]n't want to." *Id.* at 364, 367. Mother broke up with Haskins shortly thereafter, Haskins moved out of the apartment, and O.H. did not have any further contact with Haskins or Crow. In August 2022, O.H. felt comfortable telling her Mother what happened when she was 13, 14, and 15 years old.

{¶ 12} Crow testified that Haskins told him that he met O.H. online, that she was 20 years old, he did not have a place to have sex with her, and he wanted to use Crow's house. Crow said he put Haskins off because he felt uncomfortable but finally gave in. When Haskins brought O.H. over, Haskins wanted Crow to have sex with him and O.H. Crow testified that Haskins threatened him; "it's hard not to do what [Haskins] says. He's very — can be very aggressive and very controlling." *Id.* at 486. Crow further testified that O.H. "hardly said anything," "was very quiet," and "did what [Haskins] asked her to do." *Id.* at 486, 489. Crow corroborated O.H.'s testimony that she performed oral sex on him while Haskins had sex with her. Crow also saw Haskins having sex with and performing oral sex on O.H. while he was

waiting outside. Crow testified that these sexual acts happened on one occasion and about eight months later, Haskins told Crow that O.H. was "his daughter" and "was in school":

> All of a sudden he just told me. You know that girl that was over here was my daughter. And I've been having sex with her at the house and things like that. When the mother would be sleeping, they would be you know having sex and when she would leave to do errands or something they would be . . . having sex.

*Id.* at 492-493. Crow was "horrified" but did not tell authorities because he was afraid what Haskins would do. Crow acknowledged that he was charged in this case with three counts of rape and three counts of unlawful sexual conduct with a minor and entered a guilty a plea. Crow further acknowledged that in exchange for dropping the rape counts, he agreed to cooperate with the State and testify truthfully.

{¶ 13} Haskins was further identified as "the live-in boyfriend of [Mother] and the stepfather of O.H." by Cuyahoga Metropolitan Housing Authority, Sergeant Ashley Jaycox ("Sergeant Jaycox"), who investigated Haskins' sexual abuse of O.H. as reported by Mother. *Id.* at 433. Sergeant Jaycox testified that when she spoke to O.H. in August 2022, O.H. presented as developmentally delayed and was forensically interviewed by the Cleveland Rape Crisis Center as a result.

{¶ 14} After the State rested, the defense moved for acquittal on all counts pursuant to Crim.R. 29. Amongst other arguments, the defense asserted that the State failed to prove that 1) Haskins purposefully compelled O.H. by force or threat of force, 2) Haskins was acting as a stepparent or *in loco parentis*, and 3) there was

a clear break between the sexual acts occurring at Crow's house. After hearing the State's counterarguments, the trial court granted the defense's motion as to one count of rape and one count of sexual battery, finding that the State failed to meet its burden, and denied the motion as to all other counts.

{¶ 15} The parties then engaged in a thorough discussion regarding jury instructions with the trial court. The defense proposed a curative instruction regarding the mention of Haskins' criminal history during witness testimony. The trial court asked the defense if it was sure that it wanted to include the instruction because it was "potentially causing this to be an issue when I think it may not be," explaining:

> You are walking a line here that I think you should really consider. That moment that reference to Mr. Haskins being in jail, first of all, it was elicited on cross by defense counsel with an open-ended question. Second, it was very low-key. I sustained the objection. It was calm. I don't even know that it registered with the jury. You are now putting it right in front of them that he was in jail.

*Id.* at 571. The defense was given the night to think about whether the curative instructive should be given. The defense also requested an instruction on unlawful sexual conduct with a minor, which it argued was a lesser-included offense of sexual battery. The State requested an instruction of force as it relates to a parent or other authority figure per the Ohio Jury Instructions. The defense objected, arguing O.H. was not of tender years, and proposed an alternative instruction. The trial court overruled the defense's objection, explaining: "I think I appreciate the defense's argument but we've had testimony that the victim was between the ages of 13 and 15

when the alleged sexual assault took place. We've also had testimony that the alleged victim had cognitive defects. I think the instruction on force is appropriate . . . ." *Id.* at 591. The following morning, the defense advised that it did not want to include a curative instruction regarding Haskins' criminal history.

{¶ 16} The defense did not call witnesses or admit exhibits and renewed its Crim.R. 29 motion for acquittal. The trial court denied Haskins' renewed motion and advised that it was also denying his request to include unlawful sexual conduct with a minor as a lesser included offense of sexual battery in the jury instructions. The trial court explained:

> Primarily we're dealing with an issue where it's not a true lesser included. [T]here are two completely separate offenses and they're both the same felony level. The qualifier provided by [defense counsel] is that the tier sex offender classifications are lower for unlawful sexual conduct, but those sex offender registry requirements are a civil penalty not a criminal penalty so different. And I am concerned that if we give this lesser included we risk confusing the jury so the lesser included offenses will not — I'm not providing those.

*Id.* at 596-597. The trial court then charged the jury. Relevant to this appeal, the trial court instructed the jury that "answers to questions that I have instructed you to disregard are . . . not to be considered as evidence." *Id.* at 600. The trial court also provided the following definition of "force":

> Force means any violence, compulsion or constraint physically exerted by any means upon or against a person or a thing.
>
> . . .
>
> Force of parent or other authority figure. When the relationship between the victim and the defendant is one of a child and parental figure, the level of force need not be openly displayed or physically

brutal. It can be subtle, slight, psychological or emotionally powerful. If you find beyond a reasonable doubt that under the circumstances in evidence the victim's will was overcome by fear or duress or intimidation, the element of force has been proved.

*Id.* at 605, 627. Following the trial court's jury charge, the parties made their closing arguments, and the defense renewed its objections to the instructions.

{¶ 17} Ultimately, the jury found Haskins guilty of the remaining charges, which included two counts of gross sexual imposition, seven counts of rape, and seven counts of sexual battery. The trial court found that the rape and sexual battery counts merged, and the State elected to proceed to sentencing on the rape charges. The trial court sentenced Haskins to "a minimum prison term/aggregate prison term of 33 years and a maximum prison term of 38 years, 6 months on the underlying offenses."[3] (Cleaned up.) (Nunc Pro Tunc Journal Entry, 05/24/24.) Haskins was determined to be a Tier III sex offender with a lifetime registration requirement.

{¶ 18} Haskins appealed, raising three assignments of error for review.

### Assignment of Error No. 1

The trial court erred when it denied [Haskins'] proposed jury instructions and by defining force using the *Eskridge* case definition.

### Assignment of Error No. 2

The trial court erred when it failed to strike impermissible bad character evidence and denied [Haskins'] motion for a mistrial.

---

[3] This included Haskins' sentence on amended Count 1, involving victim S.L., to which Haskins entered a guilty plea.

**Assignment of Error No. 3**

The trial court erred in denying [Haskins'] Crim.R. 29 motions.

## II. Law and Analysis

### A. Jury Instructions

{¶ 19} In his first assignment of error, Haskins argues that the trial court erred in instructing the jury on two bases: 1) failing to provide the jury with a lesser-included-offense instruction and 2) providing the jury with a force instruction derived from *State v. Eskridge*, 38 Ohio St.3d 56 (1988).

{¶ 20} It is within the trial court's broad discretion to determine whether the evidence adduced at trial was sufficient to support a requested jury instruction, and its decision will not be disturbed absent an abuse of that discretion. *State v. Singleton*, 2013-Ohio-1440, ¶ 35 (8th Dist.), citing *State v. Fulmer*, 2008-Ohio-936, ¶ 72. A trial court abuses its discretion when its decision is unreasonable, arbitrary, or unconscionable. *State v. Hill*, 2022-Ohio-4544, ¶ 9, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

### 1. Lesser-Included-Offense Instruction

{¶ 21} First, Haskins argues that the trial court should have included the requested jury instruction for unlawful sexual conduct with a minor because it is a lesser included offense of sexual battery.

{¶ 22} Criminal defendants may be entitled to a jury instruction that allows the jury to consider convicting them of a lesser included offense as an alternative to the offense charged. *State v. Owens*, 2020-Ohio-4616, ¶ 8, citing *State v. Thomas*,

40 Ohio St.3d 213, 216-218 (1988). "An offense qualifies as a lesser included offense when 'the greater offense as statutorily defined cannot be committed without the lesser offense as statutorily defined also being committed.'" *Id.*, quoting *State v. Evans*, 2009-Ohio-2974, ¶ 26. To determine whether an offense is a lesser included offense, courts compare the elements of each crime. *Id.*, citing *id.* at ¶ 14. "An offense that includes an element that another offense lacks cannot be a lesser included offense of that other offense." *Id.*

{¶ 23} Turning to sexual battery and unlawful sexual conduct with a minor, it is apparent that unlawful sexual conduct with a minor is not a lesser included offense of sexual battery. In relevant part, Ohio's sexual battery statute at the time provided: "No person shall engage in sexual conduct with another, not the spouse of the offender, when . . . [t]he offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person *in loco parentis* of the other person." R.C. 2907.03(A)(5). In contrast, the statute governing unlawful sexual conduct with a minor previously provided: "No person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard." R.C. 2907.04(A).[4]

---

[4] The current versions of R.C. 2907.03 and 2907.04 became effective August 9, 2024.

{¶ 24} After comparing R.C. 2907.03(A)(5) and 2907.04(A), it is evident that unlawful sexual conduct with a minor includes elements that sexual battery does not. As noted by the State, the unlawful-sexual-conduct-with-a-minor statute includes an age requirement: the victim must be "thirteen years of age or older but less than sixteen years of age." R.C. 2907.04(A). Additionally, the offender must "know[ ]" the victim's age or be "reckless in that regard." *Id.* The sexual-battery statute does not require proof of the victim's age or the offender's mens rea. Rather, R.C. 2907.03(A)(5) "'imposes strict liability for sexual conduct on offenders who exploit their victims through established authoritarian relationships.'" *State v. Brown*, 2019-Ohio-2599, ¶ 8 (9th Dist.), quoting *State v. Mole*, 2016-Ohio-5124, ¶ 2. Therefore, unlawful sexual conduct with a minor includes elements that sexual battery lacks — the victim must be a certain age and the offender must act with knowledge or recklessness of that age. Because of these additional elements, it is possible for an offender to commit sexual battery without necessarily committing unlawful sexual conduct with a minor. Accordingly, unlawful sexual conduct with a minor is not a lesser included offense of sexual battery.

### 2. "Force" Instruction

{¶ 25} Next, Haskins argues that the trial court erred when it incorporated *Eskridge's* definition of "force" into the jury instructions. Haskins claims that this definition was inapplicable because O.H. was not a young child, rather, she was between the ages of 13 and 15 years old.

{¶ 26} Force is an essential element of both rape and gross sexual imposition. *See* R.C. 2907.02(A)(2) and 2907.05(A)(1). "Force" is statutorily defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). In *Eskridge*, 38 Ohio St.3d 56 at 58, the Ohio Supreme Court reviewed a father's conviction for the forceful rape of his four-year old daughter and recognized the "coercion inherent in parental authority when a father sexually abuses his child." The *Eskridge* Court explained that "'[t]he force and violence necessary in rape is naturally a relative term, depending upon the age, size and strength of the parties and their relation to each other . . . .'" *Id.*, citing *State v. Labus*, 102 Ohio St. 26, 38 (1921). Accordingly, the Ohio Supreme Court held, "Force need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established." *Id.* at 59.

{¶ 27} In *State v. Clark*, 2015-Ohio-3077, this court reviewed a defendant's convictions for the rape of his live-in girlfriend's 15-year-old daughter. Like Haskins, the defendant in *Clark* claimed that the trial court erroneously applied *Eskridge's* definition of force because it pertained only to younger victims. *Id.* at ¶ 25. In analyzing the defendant's claim, we provided the following review of cases that applied the same logic in instances where the minor victim was a teenager:

> In *State v. Fowler*, 27 Ohio App.3d 149 (8th Dist. 1985), this court considered a stepfather charged with four counts of raping his stepdaughter when she was under the age of 13, and two counts of raping his stepdaughter when she was over the age of 13. This court found sufficient force to establish all six offenses and stated:

In the within case, we are confronted with a child being told to do something by an important figure of authority and commanded not to tell anyone about it. In such a case, we find nothing unreasonable about a finding that the child's will was overcome. Consequently, the forcible element of rape was properly established.

In *State v. Milam*, Cuyahoga No. 86268, 2006-Ohio-4742, ¶ 12 (8th Dist.), and *State v. Szorady*, 2011-Ohio-1800, ¶ 34 (8th Dist.), this court considered offenses against 13-year-old victims and concluded that:

if the alleged victim is a minor child, evidence of subtle and/or psychological force may be sufficient to support conviction of an accused who is an authority figure to that child, even in the absence of any express threat of harm or significant physical restraint.

In *State v. Robinson*, 2009-Ohio-1879, ¶ 17 (8th Dist.), this court found sufficient evidence of force in a matter involving a 14-year-old victim who was abused by her uncle, and the evidence indicated that he told her not to tell anyone, and that she was scared. In *State v. Scott*, 2007-Ohio-2111, ¶ 21 (8th Dist.) this court found sufficient evidence of force in a matter involving a 14-year-old victim who was abused by her uncle, and the evidence indicated that he told the victim "not to tell anyone because it would break up the family, and that he would go away for a long time and not be with the family."

(Cleaned up.) *Id.* at ¶ 29-30.

{¶ 28} Here, O.H. detailed the sexual abuse that occurred when she was between the ages of 13 and 15 years old. O.H. testified that this abuse was perpetrated by Haskins, who was "like a stepfather." Crow offered further testimony that Haskins described O.H. as "his daughter." Moreover, Mother testified that Haskins would be home alone with O.H, take O.H. to school, and pick her up. O.H. also testified that Haskins taught her to cook, played games with her, and disciplined her. Both Mother and O.H. offered testimony that O.H. listened to Haskins. O.H.

explained that she did not tell anyone about Haskins' abuse because she was scared, he told her that no one would believe her, and she thought Mother would be mad at her. Testimony was also offered that O.H. presented as developmentally delayed.

{¶ 29} Based on the foregoing, we cannot say that the trial court acted unreasonably, arbitrarily, or unconscionably when it provided both the R.C. 2901.01(A)(1) and *Eskridge* definitions of force in its jury instructions. Our review of the record reveals that the evidence adduced at trial was sufficient to support the State's requested *Eskridge* instruction. Accordingly, we find that the trial court did not abuse its discretion in instructing the jury and Haskins' first assignment of error is overruled.

## B. Character Evidence

{¶ 30} In his second assignment or error, Haskins argues that the trial court erred when it failed to strike impermissible bad character evidence and denied his motion for a mistrial. Haskins claims that witnesses referenced his criminal history on two separate occasions: 1) O.H.'s mother testified that Haskins was sleeping in the living room after "he had gotten out of jail" and 2) O.H. testified that Crow was a friend of Haskins' probation officer.

{¶ 31} Mistrials should be declared "only 'when the ends of justice so require and a fair trial is no longer possible.'" *State v. Knuff*, 2024-Ohio-902, ¶ 150, quoting *State v. Franklin*, 62 Ohio St.3d 118, 127 (1991). "'The granting or denial of a motion for mistrial rests in the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion.'" *Id.,* quoting *State v. Treesh*, 90 Ohio St.3d

460, 480 (2001). So too does the admission or exclusion of evidence, which also lies within the trial court's sound discretion. *State v. Sage*, 31 Ohio St.3d 173, 180 (1987).

{¶ 32} Evid.R. 404(B)(1) provides that "[e]vidence of any other crime, wrong or act is not admissible to prove the person's character in order to show that on a particular occasion the person acted in accordance with the character." The Ohio Supreme Court recently explained the three-step analysis that a trial court must perform to determine whether challenged evidence is inadmissible other-acts evidence:

> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. See Evid.R. 403.

*Knuff* at ¶ 116, quoting *State v. Williams*, 2012-Ohio-5695, ¶ 19-20. When the defendant seeks a mistrial based on impermissible testimony about other acts, the trial court does not abuse its discretion by denying the motion if the references were brief and isolated, the remarks were followed by a curative instruction, and the likelihood of prejudice is low. *State v. Friess*, 2023-Ohio-3409, ¶ 116 (6th Dist.) (noting that "[t]his can be true even when there are several references to improper evidence"), citing *State v. Durst*, 2020-Ohio-607, ¶ 47 (6th Dist.), citing *State v.*

*Trimble*, 2009-Ohio-2961, ¶ 174-175, and *State v. Garner*, 74 Ohio St.3d 49, 59, (1995).

{¶ 33} Here, the references made by Mother and O.H. to Haskins' prior incarceration and probation officer were general, vague, and brief. The jury did not hear why or when Haskins was in jail or what involvement he had with a probation officer. Moreover, the references were made in response to questions unrelated to Haskins' character and were not offered to show that Haskins acted in accordance therewith. Rather, on cross-examination Haskins asked Mother to identify when Haskins slept on a blow-up bed in the living room. Attempting to recall that period, Mother mentioned that "it had to have been right after he had gotten out of jail" and ultimately testified that she could not remember the exact time. Next, O.H. mentioned that Crow was a friend of Haskins' probation officer after the State followed up regarding her testimony that she thought Crow "was an officer" because that is what Haskins told her and Mother.

{¶ 34} The trial court sustained Haskins' objection to the first of these two references, denied Haskins' motion for mistrial, and provided a curative instruction that "any time an [objection to an] answer to a question or a question is sustained, you're not going to hear the answer." Another instruction along these lines was provided in the jury instructions. The defense drafted an additional curative instruction regarding the mention of Haskins' criminal history during witness testimony. However, the trial court, who observed the jury's reactions to the evidence presented throughout the trial, described the references as "low-key" and

"calm"; advised that it did not know that they "registered with the jury"; and cautioned that further instruction may draw the jury's attention to a nonissue. The defense ultimately decided against further instruction, seemingly agreeing that the references to Haskins' criminal history were indeed fleeting. Thus, we cannot say that a fair trial was impossible following Mother and O.H.'s passing references to Haskins' prior incarceration and probation officer. Nor can we say that the trial court abused its discretion in its handling of those references. Accordingly, Haskins' second assignment of error is overruled.

### C. Crim.R. 29 Motions

{¶ 35} In his third assignment of error, Haskins argues that the trial court erred in denying his Crim.R. 29 motions for acquittal. Haskins claims that the State did not provide sufficient evidence to 1) meet the force element of the rape and gross sexual imposition charges; 2) meet the *in loco parentis* element for the sexual battery charges; and 3) justify the multiple rape and sexual battery counts from the alleged acts that occurred at Crow's house.

{¶ 36} Crim.R. 29(A) provides, "The court on motion of a defendant . . ., after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." Since "a Crim.R. 29 motion questions the sufficiency of the evidence, '[w]e apply the same standard of review to Crim.R. 29 motions as we use in reviewing the sufficiency of

the evidence.'" *Fairview Park v. Peah*, 2021-Ohio-2685, ¶ 37 (8th Dist.), quoting *State v. Tenace*, 2006-Ohio-2417, ¶ 37.

{¶ 37} A sufficiency challenge requires a court to determine whether the State met its burden of production at trial and to consider not the credibility of the evidence but whether, if credible, the evidence presented would sustain a conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991), citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "When analyzing a claim of sufficiency of the evidence, a reviewing court is neither permitted to assess the credibility of witnesses nor otherwise weigh the evidence." *State v. Young*, 2022-Ohio-3132, ¶ 47 (8th Dist.) citing *In re A.W.*, 2016-Ohio-7297, ¶ 33 (8th Dist.). Thus, in a sufficiency — or Crim.R. 29(A) — assessment, the reviewing court assumes that witnesses testified truthfully and evaluates whether that testimony, along with any other direct or circumstantial evidence presented at trial, satisfies each element of the offense. *Cleveland v. Clark*, 2024-Ohio-4491, ¶ 39 (8th Dist.), citing *In re D.R.S.*, 2016-Ohio-3262, ¶ 23 (8th Dist.), and *State v. Wells*, 2021-Ohio-2585, ¶ 25 (8th Dist.).

{¶ 38} First, Haskins argues that because "the trial court adopted the much more expansive definition of force from *Eskridge*," the State did not provide sufficient evidence to meet the "force" element for the rape and gross sexual imposition charges as defined by R.C. 2901.01(A). Haskins also argues that the State

failed to prove that Haskins was *in loco parentis*, an essential element of sexual battery.

{¶ 39} As discussed above, we find that the *Eskridge* definition of force was appropriate based on the record before us. For those same reasons, we find that the State presented sufficient evidence through witness testimony to establish the element of "force" required to commit rape and gross sexual imposition: 1) the relationship between O.H. and Haskins was one of a child and parental figure; 2) the level of force was subtle, slight, psychological, or emotionally powerful; and 3) that under the circumstances, O.H.'s will was overcome by fear or duress or intimidation. Also for those reasons, we find that the State presented sufficient evidence that Haskins was O.H.'s "stepparent[ ] or guardian, custodian, or person *in loco parentis*" of O.H. as required to establish sexual battery under R.C. 2907.03(A)(5).

{¶ 40} Finally, Haskins argues that the State only presented evidence of one sexual abuse incident at Crow's house and the evidence did not support three separate charges for both rape and sexual battery. However, our review of the record suggests otherwise. O.H. provided detailed testimony regarding one particular sexual encounter at Crow's house where she performed oral sex on Crow, Crow touched her vagina, and Haskins inserted his penis into her vagina. O.H. further testified that "this specific threesome behavior" happened "a few times" at Crow's house. Crow corroborated O.H.'s testimony that she performed oral sex on him while Haskins had sex with her and testified that he saw Haskins having sex with

and performing oral sex on O.H. while he was waiting outside. While Crow testified that these sexual acts happened on only one occasion, we cannot assess the credibility of O.H. and Crow, or otherwise weigh the evidence, in a sufficiency — or Crim.R. 29(A) — challenge. Viewing this evidence in a light most favorable to the prosecution, any rational trier of fact could have found that the incidents at Crow's house resulted in three separate counts of both rape and sexual battery, the elements of which could be proven beyond a reasonable doubt. Thus, the State presented sufficient evidence to support Haskins' convictions. Accordingly, Haskins' third assignment of error is overruled.

{¶ 41} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

EMANUELLA D. GROVES, JUDGE

EILEEN A. GALLAGHER, P.J., and
EILEEN T. GALLAGHER, J., CONCUR